**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

FILED

JAN 1 5 2016

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

CAROLYN CLARK,                                    :
JON HANN,                                         :
ANGELA OSMENT,                                    :
LEON WILSON,                                      :
DEBRA PUNTURI,                                    :     CIVIL ACTION NO.
ELMO WILCOX, III,                                 :
ROSEMARY ROBINSON,                                :     3:16cv032
MARVEEN ROBINSON,                                 :
HEZEKIAH WINN,                                    :
RODERICK SAMUELS,                                 :
WANDA MCDOWNEY,                                   :
ELIZABETH KIRWIN,                                 :
SUSAN CHANDLER,                                   :
KIM BREEDEN, and                                  :
OLGA ANDERSON, *on behalf of themselves*          :
*and all other similarly situated individuals,*    :
                                                  :
        Plaintiffs,                               :
                                                  :
v.                                                :
                                                  :
EXPERIAN INFORMATION SOLUTIONS, INC. :
                                                  :
SERVE:      David N. Anthony                       :
            Troutman Sanders LLP                   :
            1001 Haxall Point                      :
            Richmond VA, 23219                     :
                                                  :
        Defendant.                                :

## CLASS ACTION COMPLAINT

The Plaintiffs, Carolyn Clark, Jon Hann, Angela Osment, Leon Wilson, Debra Punturi,

Elmo Wilcox III, Rosemary Robinson, Marveen Robinson, Hezekiah Winn, Roderick Samuels,

Wanda McDowney, Elizabeth Kirwin, Susan Chandler, Kim Breeden, and Olga Anderson

(hereafter "Plaintiffs"), by counsel, on behalf of themselves and all similarly situated individuals,

allege as follows:

## PRELIMINARY STATEMENT

1.      This is a consumer class action brought for willful violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), against Defendant Experian Information Solutions, Inc. ("Experian"). Plaintiffs allege a class claim under 15 U.S.C. § 1681g(a) because Experian regularly and routinely fails to disclose the source of any public record information that it reports about consumers. In actuality, Experian obtains this information from one or more third-party vendors, and not the actual courthouses where the records are maintained. Experian's failure to accurately disclose the source of this information anywhere in a consumer's credit report violates the FCRA.

2.      Plaintiffs Clark, Chandler, Breeden, and Anderson also allege a class claim under 15 U.S.C. § 1681e(b) because Experian does not follow reasonable procedures to gather information from the courts when the civil judgments are satisfied, vacated, appealed, or similarly dismissed, with the same rigor and process that it employs to gather information when those judgments are initially entered in favor of various judgment creditors, many of which include its paying subscribers.

3.      Plaintiffs Clark, Chandler, Breeden, Anderson, and each putative class member were each the subject of a consumer report sold to a third party which inaccurately reflected that the underlying judgment against them was still due and owing at such time when it was not.

4.      Further, Plaintiffs Carolyn Clark, Susan Chandler, and each putative member of the dispute sub-class previously placed Experian on actual notice that the judgment had been satisfied, vacated, appealed or similarly dismissed before Experian then, nonetheless, sold a

2

consumer report to a third party when the consumer report contained the inaccurate notation of an unpaid judgment.

5.      Plaintiff Carolyn Clark ("Ms. Clark") also brings an individual action against Experian pursuant to §1681i of the FCRA because she disputed inaccurate judgment information in her Experian credit file and Experian failed to conduct a reasonable investigation of her dispute.

6.      Ms. Clark's effort to remove inaccurate judgment information from her Experian credit file demonstrates the significance of the Plaintiffs' class claims. In particular, after obtaining her credit report, Ms. Clark discovered an inaccurate judgment in her credit file—the judgment had been appealed and dismissed in her favor. Had Experian used reasonable procedures to ensure the collection of judgment *disposition* information with the same fervor that it collected judgment *entry* information, it is likely that the judgment would never have been reported to Ms. Clark's potential creditors and other purchasers of her credit report. This issue was compounded when, despite multiple disputes from Ms. Clark, Experian never disclosed true source of the public record information, i.e., Experian's public record vendor. Instead, Experian continually directed Plaintiff to contact the Henrico County General District Court, who was, of course, unable to correct the Plaintiff's credit report.

## JURISDICTION

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as Experian regularly conducts business in this district and division.

**PARTIES**

9.     Each Plaintiff is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

10.     Defendant Experian Information Solutions Inc. ("Experian") is a foreign corporation doing business in Virginia. At all times relevant to this complaint, it was a "consumer reporting agency" as defined by the FCRA at 15.U.S.C. § 1681a(f).

**FACTS**

*Facts pertaining to all Plaintiffs*

11.     For several years, Experian has obtained its bankruptcy, civil judgment, and tax lien information (i.e., "public records") from LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis"); First Advantage Corporation, a Symphony Technology Group company ("First Advantage"); and/or other private businesses that it calls "vendors."

12.     Nevertheless, on the credit reports that it provides to consumers, Experian falsely lists the names and addresses of courthouses or other government offices as the true "source" of its public records information.

13.     Additionally, the public records information that Experian receives from its vendors is not the actual court or taxing-authority records. Instead, it is a condensed version of those records, also known as an "index record", which does not include *all* of the information available at the actual courthouses or government offices where the true records are housed.

14.     The FCRA unambiguously requires credit-reporting agencies, such as Experian, to "clearly and accurately disclose to the consumer" who requests his or her credit file "the sources" that supplied any "information" to the CRA about that consumer. 15 U.S.C. §

1681g(a)(2). Legal precedent is clear that Experian must clearly and accurately disclose to consumers all information that it stores regarding them. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d. Cir. 2010).

15.    Disclosure of the true source of a consumer-reporting agency's information is vital so that certain credit reporting errors that originate at the source can be corrected, and so that consumers always know who is furnishing important credit information about them.

16.    Nevertheless, and despite the clear mandate of § 1681g(a)(2), Experian never discloses the true source of the public records information that it collects and reports about consumers.

17.    Experian conceals that its sources for public record information are private vendors.

18.    In this regard, Experian is more interested in maintaining the appearance that it receives actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information as required by § 1681g(a)(2).

19.    Additionally, Experian has been sued repeatedly for failing to clearly and accurately disclose the true source of the public records information that it collects and reports about consumers. *See, e.g., Williams v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1102 (E.D. Va. 2013); *Beattie v. Experian Info. Solutions, Inc.*, Case No. 1:13-cv-1195 (E.D. Va. 2013).

20.    Despite these lawsuits, Experian has not significantly modified its procedures to clearly and accurately disclose the sources of information it reports.

21.     Additionally, upon information and belief, Experian obtained or had available substantial written materials that apprised it of its duties under the FCRA. Moreover, Experian is on notice from other cases against it, such as *Dreher v. Experian Info. Solutions, Inc.*, Case No. 3:11-cv-624, that its procedures for compliance with § 1681g(a)(2) are wholly inadequate. For example, even though it was enacted more than 40 years ago, Experian maintains it does not have a written policy for compliance with this cornerstone provision of the FCRA.

22.     And, despite multiple lawsuits, Experian refuses to meaningfully consider the issue or heed guidance from the district courts.

23.     Accordingly, Experian's violations of 15 U.S.C. § 1681(g) were willful and it is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### Facts Pertaining to Plaintiffs Carolyn Clark, Susan Chandler, Kim Breeden, and Olga Anderson

24.     Experian produced reports about Plaintiffs Carolyn Clark, Susan Chandler, Kim Breeden, Olga Anderson, and each putative 1681e(b) class member which contained inaccurate judgment information.

25.     Virginia's court records are maintained in a uniform and centralized manner. As the Fourth Circuit explained in summarizing the record of *Soutter v. Equifax Information Services, LLC*, on appeal:

> The court records are managed by the Office of Executive Secretary of the Supreme Court of Virginia, which operates a shared case management system for the state's courts. The clerk of each local court uses a uniform system for recording judgments, and the judgment sheet available in the case management system lists only the most recent case disposition. For example, if a case is vacated and then later dismissed, the system would record the case simply as dismissed.

*Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 262 (4th Cir. 2012).

26.     Unlike credit accounts, Experian affirmatively seeks out and purchases public records data, including Virginia civil judgments, to report to the world about Virginians when it sells their credit files. It proactively gathers and disseminates this derogatory information even though there is nothing in the FCRA that affirmatively requires it to do so. The reporting of Virginia civil judgments primarily benefits Experian's customer base, which relies on the credit reporting of these judgments as a collection tool.

27.     Experian has used a series of different vendors over the years. Originally, these vendors relied on in-person manual reviews of civil courthouse records. Typically, clerk's offices would make available copies of termination records—satisfactions, dismissals, vacatures, and appeals. Weekly update reports were made available. Docket books were examined. A careful, in-person review was conducted.

28.     However, sometime after 2006, Experian and its vendors stopped this more careful process and began collection of judgment information solely from automated resources.

29.     After the switch to this automated process, Experian and its vendor rarely collected any judgment disposition information. And the only "in-person" review to verify the automated data was attempted only after a consumer made a formal dispute, and even then, only rarely. In short, Experian was publishing judgment data that it knew would be inaccurate if a satisfaction, dismissal, vacatur or appeal had occurred—relying on consumers to clean up their own files via the dispute process after learning of the inaccuracy, rather than paying to have these "dispositions" collected with the same vigor that it collected records of the initial entry of judgment.

7

30.    Upon information and belief, the methods and processes used by Experian and its vendor to gather Virginia General District Court satisfactions, vacaturs, appeals and other dismissals was materially the same from January 2008 through June 2014.

31.    Upon information and belief, Experian's vendor was obligated to collect and provide all affirmative judgments under its contract with Experian. However, in contrast, the vendor was only obligated to collect judgment terminations if the vendor determined it was "commercially reasonable" to do so.

32.    At all times pertinent to this Complaint, Experian's conduct regarding the collection of judgment disposition information was willful and carried out in reckless disregard for a consumer's rights as set forth under the FCRA. By example only and without limitation, Experian's conduct is willful because it was intentionally accomplished through intended procedures and as Experian's diligence in collecting and reporting derogatory information is believed by it to be of greater economic value to its paying customers than "disposition" information that demonstrated that the debt was no longer owed to those customers. Experian has also been on notice of these issues throughout the pendency of the *Soutter v. Equifax Information Solutions, LLC* action, which is still pending to this day.

33.    At all times pertinent to this Complaint, Experian was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under Experian's direct supervision and control.

8

### *Facts pertaining to Plaintiff Carolyn Clark*

34.     As early as May 2009, Ms. Clark has requested several copies of her full consumer file from Experian because it is and continues to inaccurately report the outcome of a Henrico County General District Court case that was filed against her.

35.     In response to Ms. Clark's repeated requests, Experian provided and furnished Ms. Clark with a copy of her consumer reports on multiple occasions within the past two years.

36.     Each consumer report contained a bankruptcy from the United States Bankruptcy Court for the Eastern District of Virginia.

37.     This consumer report also contained two civil judgments from Henrico County General District Court, one that was including reported as satisfied.

38.     The other judgment, in favor of Quik Cash 200, was dismissed with prejudice against Ms. Clark, but Experian was falsely reporting it as an outstanding judgement.

39.     Upon information and belief, Experian sold Plaintiff Clark's consumer report containing the inaccurate judgment information to one or more entities after Plaintiff Clark disputed the accuracy of the judgment status.

40.     Ms. Clark has disputed the status of the Quik Cash 200 judgment at least three times with Experian. In each instance Ms. Clark forwarded written correspondence to Experian and indicated the case against her had been dismissed.

41.     When Experian refused to correct the inaccurate reporting after her first dispute, Ms. Clark went to Henrico General District Court and obtained proof that the court—Experian's alleged source of the judgment information—had correctly noted the Quik Cash judgment as dismissed.

42. On or about May 9, 2013, Ms. Clark forwarded a written dispute to Experian with the documentation from Henrico General District Court proving that the reporting was false.

43. In response, Experian indicated that it refused to investigate this matter again and suggested Ms. Clark contact the source—Henrico General District Court—directly.

44. In response Ms. Clark contacted the Virginia Poverty Law Center for assistance. Her lawyer there also went to the Henrico County General District Court and confirmed that the case had been dismissed with them directly.

45. On or about October 7, 2014, Ms. Clark forwarded a third dispute to Experian because her most recent Experian report indicated that the Quik Cash 200 judgment was listed on her report twice.

46. Shortly thereafter, on or about October 22, 2014, Experian forwarded correspondence to Ms. Clark indicating that the Quik Cash judgment "remains" on her credit report.

47. Upon information and belief, Experian investigated Ms. Clark's consumer dispute by translating the content of her dispute into an "ACDV" form, which was sent to the public records vendor—not the Henrico General District Court.

48. Upon information and belief, had Experian used the same diligent procedures to obtain information regarding satisfied judgments as it does to obtain the judgments themselves, it would not have reported this inaccurate information in Plaintiff Clark's consumer file.

49. Furthermore, in each communication with Ms. Clark, Experian falsely represented that the sole source of the public records in her consumer reports were the United States

Bankruptcy Court for the Eastern District of Virginia and the Henrico County General District Court.

50.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from the United States Bankruptcy Court for the Eastern District of Virginia or the Henrico County General District Court.

51.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

52.     Notwithstanding the FCRA's requirements, Experian deprived Ms. Clark of this valuable information, in accordance with its standard practice and procedures.

### Facts pertaining to Plaintiff Jon Hann

53.     In late 2013, Mr. Hann requested a full copy of his file from Experian.

54.     On or around January 17, 2014 in response to Mr. Hann's request, Experian furnished Mr. Hann a copy of his consumer report.

55.     This consumer report contained a bankruptcy from the United States Bankruptcy Court for the Eastern District of Virginia and several civil judgments in Chesterfield General District Court, Culpeper County General District Court, and Richmond City General District Court.

56.     In the report, Experian falsely represented that the sole source of these public records was the United States Bankruptcy Court for the Eastern District of Virginia, the Chesterfield General District Court, the Culpeper County General District Court, and the Richmond City General District Court.

11

57.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from any of these courts.

58.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

59.     Notwithstanding the FCRA's requirements, Experian deprived Mr. Hann of this valuable information, in accordance with its standard practice and procedures.

### Facts pertaining to Plaintiff Angela Osment

60.     In late 2013, Ms. Osment requested a full copy of her file from Experian.

61.     On or around January 16, 2014, in response to Ms. Osment's request, Experian furnished her a copy of her consumer report.

62.     This consumer report contained a bankruptcy from the United States Bankruptcy Court for the Eastern District of Virginia.

63.     In the report, Experian falsely represented that the sole source of these public records was the United States Bankruptcy Court for the Eastern District of Virginia.

64.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

65.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

66.     Notwithstanding the FCRA's requirements, Experian deprived Ms. Osment of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Leon Wilson*

67.     On or around December 8, 2015, Mr. Wilson requested a full copy of his file from Experian.

68.     On or around December 8, 2015 in response to Mr. Wilson's request, Experian furnished him a copy of his consumer report.

69.     This consumer report contained a civil judgment in Mecklenburg General District Court.

70.     In the report, Experian falsely represented that the source for this judgment was the actual general district courthouse where the judgment was entered.

71.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

72.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

73.     Notwithstanding the FCRA's requirements, Experian deprived Mr. Wilson of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Debra Punturi*

74.     On or around October 14, 2015, Ms. Punturi requested a full copy of her file from Experian.

75.     On or around October 14, 2015 in response to Ms. Punturi's request, Experian furnished her a copy of her consumer report.

76.     This consumer report contained a civil judgment in Spotsylvania General District Court.

77.     In the report, Experian falsely represented that the source for this judgment was the actual general district courthouse where the judgment was entered.

78.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

79.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

80.     Notwithstanding the FCRA's requirements, Experian deprived Ms. Punturi of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Elmo Wilcox, III*

81.     On or around September 30, 2015, Mr. Wilcox requested a full copy of his file from Experian.

82.     On or around September 30, 2015 in response to Mr. Wilcox's request, Experian furnished him a copy of his consumer report.

83.     This consumer report contained a civil judgment in Richmond City General District Court.

84.     In the report, Experian falsely represented that the source for the judgment was the actual general district courthouse where the judgment was entered.

85.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

86.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

14

87.     Notwithstanding the FCRA's requirements, Experian deprived Mr. Wilcox of this valuable information, in accordance with its standard practice and procedures.

### Facts pertaining to Plaintiff Rosemary Robinson

88.     On or around October 15, 2015, Ms. Robinson requested a full copy of her file from Experian.

89.     On or around October 15, 2015 in response to Ms. Robinson's request, Experian furnished her a copy of her consumer report.

90.     This consumer report contained several civil judgments in Essex General District Court.

91.     In the report, Experian falsely represented that the source for these judgments was the actual general district courthouse where the judgments were entered.

92.     Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

93.     Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

94.     Notwithstanding the FCRA's requirements, Experian deprived Ms. Robinson of this valuable information, in accordance with its standard practice and procedures.

### Facts pertaining to Plaintiff Marveen Robinson

95.     On or around November 16, 2015, Ms. Robinson requested a full copy of her file from Experian.

96.     On or around November 26 2015, in response to Ms. Robinson's request, Experian furnished her a copy of her consumer report.

97. This consumer report contained several civil judgments in Emporia General District Court and Greensville General District Court.

98. In the report, Experian falsely represented that the sources for these judgments were the actual general district courthouses where the judgments were entered.

99. Experian did not obtain any public records information about Plaintiff—or any other consumer—from any of these courts.

100. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

101. Notwithstanding the FCRA's requirements, Experian deprived Ms. Robinson of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Hezekiah Winn*

102. On or around October 11, 2015, Mr. Winn requested a full copy of his file from Experian.

103. On or around October 27, 2015 in response to Mr. Winn's request, Experian furnished him a copy of his consumer report.

104. This consumer report contained a bankruptcy from the United States Bankruptcy Court.

105. This consumer report also contained several civil judgments in Fredericksburg City General District Court and Spotsylvania General District Court.

106. In the report, Experian falsely represented that the sources for these judgments were the actual bankruptcy and general district courthouses where the judgments were entered.

107. Experian did not obtain any public records information about Plaintiff—or any other consumer—from any of these courts.

108. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

109. Notwithstanding the FCRA's requirements, Experian deprived Mr. Winn of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Roderick Samuels*

110. On or around September 29, 2015, Mr. Samuels requested a full copy of his file from Experian.

111. On or around November 12, 2015 in response to Mr. Samuels's request, Experian furnished him a copy of his consumer report.

112. This consumer report contained several civil judgments in Fredericksburg City General District Court.

113. In the report, Experian falsely represented that the source for these judgments was the actual general district courthouse where the judgments were entered.

114. Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

115. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

116. Notwithstanding the FCRA's requirements, Experian deprived Mr. Samuels of this valuable information, in accordance with its standard practice and procedures.

17

### *Facts pertaining to Plaintiff Wanda McDowney*

117.   On or around October 2, 2015, Ms. McDowney requested a full copy of her file from Experian.

118.   On or around October 23, 2015 in response to Ms. McDowney's request, Experian furnished her a copy of her consumer report.

119.   This consumer report contained several civil judgments in Fredericksburg City General District Court.

120.   In the report, Experian falsely represented that the source for these judgments was the actual general district courthouse where the judgments were entered.

121.   Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

122.   Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

123.   Notwithstanding the FCRA's requirements, Experian deprived Ms. McDowney of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Elizabeth Kirwin*

124.   In or around October 2015, Ms. Kirwin requested a full copy of her file from Experian.

125.   On or around October 1, 2015 in response to Ms. Kirwin's request, Experian furnished Ms. Kirwin a copy of her consumer report.

126.   This consumer report contained a bankruptcy from the "US Bkpt Ct NC Charlotte."

18

127. In the report, Experian falsely represented that the sole source of this public record was the United States Bankruptcy Court in Charlotte, North Carolina.

128. Experian did not obtain any public records information about Plaintiff—or any other consumer—from this court.

129. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

130. Notwithstanding the FCRA's requirements, Experian deprived Ms. Kirwin of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Susan Chandler*

131. On or around August 2010, Midland Funding, LLC obtained a judgment against Plaintiff Chandler in Henrico General District Court.

132. Plaintiff satisfied this judgment and a Notice of Satisfaction was filed with the Henrico General District Court.

133. Thereafter, Plaintiff Chandler requested her consumer disclosure from the Defendant on one or more occasions.

134. Noticing that the judgment was reporting incorrectly, Plaintiff Chandler wrote to the Defendant and put it on notice that the judgment was reporting incorrectly.

135. Despite Plaintiff Chandler's dispute, Defendant continued to thereafter report the judgment balance as outstanding.

136. Furthermore, Experian falsely represented that the sole source of this public record was the Henrico County General District Court.

137. Experian did not obtain any public records information about Plaintiff Chandler—or any other consumer—from this court.

138. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

139. Notwithstanding the FCRA's requirements, Experian deprived Ms. Chandler of this valuable information, in accordance with its standard practice and procedures.

### Facts pertaining to Plaintiff Kim Breeden

140. On or around December 10, 2008, Capital One Bank, N.A. obtained a judgment against Plaintiff Breeden in Richmond City General District Court.

141. Plaintiff satisfied this judgment and a Notice of Satisfaction was filed with the Richmond General District Court on July 29, 2015.

142. On or around September 29, 2015, Plaintiff Breeden requested a copy of her consumer disclosure from the Defendant.

143. Defendant responded to Plaintiff Breeden's request and provided her with a consumer disclosure dated September 29, 2015.

144. The consumer report that Experian provided falsely stated that the judgment was still outstanding and unpaid.

145. Upon information and belief, had Experian used the same diligent procedures to obtain information regarding dispositions of judgments as it does to obtain the judgments themselves, it would not have reported this inaccurate information in Plaintiff Breeden's consumer file.

146. Upon information and belief, Experian sold Plaintiff Breeden's consumer report

20

containing the inaccurate judgment information to one or more entities.

147.    Furthermore, Experian falsely represented that the sole source of this public record was the Richmond City General District Court.

148.    Experian did not obtain any public records information about Plaintiff Breeden—or any other consumer—from this court.

149.    Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

150.    Notwithstanding the FCRA's requirements, Experian deprived Ms. Breeden of this valuable information, in accordance with its standard practice and procedures.

### *Facts pertaining to Plaintiff Olga Anderson*

151.    On or around January 6, 2012, Capital One Bank, N.A. obtained a judgment against Plaintiff Anderson in Richmond City General District Court.

152.    Plaintiff satisfied this judgment and a Notice of Satisfaction was filed with the Richmond General District Court on July 8, 2015.

153.    On or around September 30, 2015, Plaintiff Anderson requested a copy of her consumer disclosure from the Defendant.

154.    Defendant responded to Plaintiff Anderson's request and provided her with a consumer disclosure dated September 30, 2015.

155.    The consumer report that Experian provided falsely stated that the judgment was still outstanding and unpaid.

156.    Upon information and belief, had Experian used the same diligent procedures to obtain information regarding dispositions of judgments as it does to obtain the judgments

21

themselves, it would not have reported this inaccurate information in Plaintiff Anderson's consumer file.

157. Upon information and belief, Experian sold Plaintiff Anderson's consumer report containing the inaccurate judgment information to one or more entities.

158. Furthermore, Experian falsely represented that the sole source of this public record was the Richmond City General District Court.

159. Experian did not obtain any public records information about Plaintiff Anderson—or any other consumer—from this court.

160. Rather, Experian obtained this information from LexisNexis or one of its other private vendors.

161. Notwithstanding the FCRA's requirements, Experian deprived Ms. Anderson of this valuable information, in accordance with its standard practice and procedures.

**COUNT ONE:**
**Violation of 15 U.S.C. § 1681g(a)(2)**
***(Class Action Claim)***

162. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

163. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class (the "1681g Class") defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who requested their consumer file from Experian or any of its affiliated companies, subsidiaries, or any other Experian entity, (b) within two years preceding the filing of this action and during its pendency, and (c) to whom Experian provided a response that did not include any the reference to its public records vendor as the source of public records information within the consumer's file disclosure. Excluded from the class definition are any

employees, officers, directors of Experian, any attorney appearing in this case, and any judge assigned to hear this action.

164.    Upon information and belief, Plaintiffs' counsel estimates that the class is so numerous that joinder of all members is impractical.

165.    Plaintiffs' counsel is in possession of numerous consumer files that Experian sent to a consumer in response to his or her request for a complete copy of his or her Experian consumer file. None of these letters or consumer files contains the actual source of the public records information that it reported about the Plaintiffs and the putative class members. This omission has remained consistent and uniform across time, jurisdictions, and consumers.

166.    There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Experian failed to send the required information in response to a consumer's request for a full copy of his or her Experian file; (b.) whether this failure was a result of Experian's standard operating procedure when responding to a consumer's request for a full copy of his or her credit file; (c.) whether Experian's conduct constituted a violation of the FCRA; (d.) whether Experian's conduct was willful; and (e.) the appropriate amount of statutory and/or punitive damages that are appropriate for such a violation.

167.    Plaintiffs' claims are typical of those of the class members. All are based on the same facts and legal theories. Experian's response to a consumer's request for a full copy of his or her consumer file routinely failed to include the source of the public records information that it reported about consumers during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

168.   The Plaintiffs will fairly and adequately protect the interests of the class.   The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices against consumers and class actions.   Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.   The Plaintiffs are aware of their responsibilities to the putative classes and have accepted such responsibilities.

169.   Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.   Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

170.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Experian has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

171.   Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.   As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member.   Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they

24

involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by Experian's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

172.    Experian's failure to clearly and accurately disclose the source of the public record information that it reported about the Plaintiffs and the putative class members violated § 1681g(a)(2) of the FCRA.

173.    Each Plaintiff and putative class member suffered real and actual injury. They were denied important information that was to have been part of their consumer disclosure otherwise to be provided upon request. The amount of money and lost value is somewhere between $0.01 and $21.95, but in each instance less than the statutory damages floor of $100.00.

174.    Experian is permitted to charge up to $12.00 for a consumer disclosure. However, it in fact uses its confusing website and marketing campaign ("FreeCreditReport.Com") to direct consumers to a product for which it charges at least $21.95 per month. In fact, it does this to direct consumers away from the one actually free option they have – AnnualCreditReport.com.

175.    Nevertheless, whether a plaintiff or putative class member managed to obtain their one free annual credit disclosure or instead paid for it, the value of that report is still set at $12.00.

176. Because the consumer disclosures Experian provided did not include all of the information Experian was obligated to include in them, they were worth some smaller amount.

177. Additionally, by example only and without limitations, the rights at issue were determined by Congress to be important measures of Experian's process to ensure continued accuracy and completeness in its files and reports.

178. The conduct, action, and inaction of Experian was willful, rendering Experian liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

179. Plaintiffs and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Experian, in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent entitling the Plaintiffs and the class to actual damages in the amount of the value of their consumer file.

180. As a result of these FCRA violations, Experian is liable to the Plaintiffs and to each putative class member for statutory damages from $100.00 to $1,000.00, punitive damages, and/or actual damages, as well as for their attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

**COUNT TWO:**
**Violation of 15 U.S.C. § 1681e(b)**
*(Plaintiffs Clark, Chandler, Breeden, and Anderson Class Action Claim)*

181. Plaintiffs Clark, Chandler, Breeden, and Anderson restate each of the allegations in the preceding paragraphs as if set forth at length herein.

182. Plaintiffs Clark, Chandler, Breeden, and Anderson bring this action individually

26

and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of

the following Class (the "1681e(b)" Class):

All natural persons who meet every one of the following definitional requirements:

a.     the computer database of the Executive Secretary of the Supreme Court of
       Virginia shows that the person was the defendant in a Virginia General
       District Court civil action or judgment;

b.     the computer database of the Executive Secretary of the Supreme Court of
       Virginia shows that as of the date 20 days after the Court's certification of
       this class, the civil action or judgment was dismissed, satisfied, appealed,
       or vacated on or after January 1, 2009 ("the disposition date"); and

c.     Experian's records note that a credit report regarding the person was
       furnished to a third party who requested the credit report, other than for an
       employment purpose at least 30 or more days after the disposition was
       recorded in the court file.

183.   Plaintiffs Clark and Chandler also allege a sub-class (the "Dispute Sub-Class") on

behalf of a group of individuals, defined as:

All natural persons who meet every one of the following definitional
requirements:

a.     the computer database of the Executive Secretary of the Supreme Court of
       Virginia shows that the person was the defendant in a Virginia General
       District Court civil action or judgment;

b.     the computer database of the Executive Secretary of the Supreme Court of
       Virginia shows that as of the date 20 days after the Court's certification of
       this class, the civil action or judgment was dismissed, satisfied, appealed,
       or vacated on or after January 1, 2009 ("the disposition date");

c.     Experian's records note receipt of a communication or dispute from that
       person about the status of a civil action or judgment that was dismissed,
       satisfied, appealed or vacated; and

d.     Experian's records note that a credit report regarding the person was
       furnished to a third party who requested the credit report, other than for an
       employment purpose at least 30 or more days after the disposition was
       recorded in the court file.

27

184. Numerosity. Fed. R. Civ. P. 23(a)(1). Upon information and belief, the Plaintiffs allege that the Class and Sub-Class are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant and through publically available court records, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

185. Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include by example only and without limitation:

a. Whether Experian adopted procedures that collected and reported updates to public record civil judgments that were less systematic and effective than those it used to collect and report the underlying judgments;

b. Whether Experian's uniform procedure for collecting judgment dispositions (including those of its agent) was a reasonable procedure to ensure maximum possible accuracy in the credit reports it furnished;

c. Whether Experian did so recklessly, knowingly, or intentionally in conscious disregard of the rights of the consumer class members; and

d. Whether Experian's conduct constituted violations of the FCRA.

186. Typicality. Fed. R. Civ. P. 23(a)(3)). Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs are entitled to relief under the same cause of action as the other members of the class. The procedures for both credit reporting and collecting the judgment dispositions were the same. The willfulness evidence is the same. Each class member provided written notice to Experian about the status of the judgment. And the time period within which all actions relevant to this class claim took place is the same.

187.    Adequacy. Fed. R. Civ. P. 23(a)(4)). Plaintiffs Susan Chandler, Carolyn Clark,
Kim Breeden, and Olga Anderson, are adequate representatives of the Class, because their
interests coincide with and are not antagonistic to the interests of the members of the class they
seek to represent; they have retained counsel competent and experienced in such litigation; and
they have prosecuted this action vigorously. Plaintiffs and their counsel will fairly and
adequately protect the interests of members of the Class.

188.    Superiority. Fed. R. Civ. P. 23(b)(3). As alleged above, questions of law and fact
common to the Class members predominate over questions affecting only individual members,
and a class action is superior to other available methods for fair and efficient adjudication of the
controversy. Further, individual prosecution would prove burdensome and expensive given the
complex and extensive litigation necessitated by Defendant's conduct and the limited availability
of legal representation for such prosecutions. It would be virtually impossible for the members of
the Class individually to redress effectively the wrongs done to them. And in fact, not a single
putative class member has filed or attempted the class claim. Even if the members of the Class
themselves could afford such individual litigation, it would be an unnecessary burden on the
Court. In fact, it is also likely that a large number of class members may not even know of the
underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise
reviewed their current credit report. Furthermore, individualized litigation presents a potential for
inconsistent or contradictory judgments and increases the delay and expense to all parties and to
the court system presented by the complex legal and factual issues raised by Defendant's
conduct. By contrast, the Class action device will result in substantial benefits to the litigants and
the Court by allowing the Court to resolve numerous individual claims based upon a single set of

proof in a case.

189.    Defendant violated 15 U.S.C. § 1681e(b) as to the Plaintiffs and to the Class by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding the Plaintiffs and other class members.

190.    Each Plaintiff and putative class member suffered real and actual harm and injury.

191.    By example only and without imitations, the rights at issue were determined by Congress to be important measures of Experian's process to ensure continued accuracy and completeness in its files and reports.

192.    In each instance for each §1681e(b) class member, their actual credit reports were materially inaccurate and reported a major derogatory public record that Experian was legally obligated to correct and omit.

193.    Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n.

194.    The Plaintiffs and each class member suffered an actual injury and loss because of Defendant's violation of 15 U.S.C. § 1681e(b) as alleged herein.

195.    The Plaintiffs and each Class member are entitled to recover statutory damages up to $1,000, punitive damages, costs, and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:
### Violation of 15 U.S.C. § 1681i(a)
### *(Plaintiff Clark's Individual Claim)*

196.   Ms. Clark restates each of the allegations in the preceding paragraphs as if set forth at length herein.

197.   Experian violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

198.   Experian violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received in Ms. Clark's dispute letter.

199.   Experian violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Ms. Clark's communications.

200.   Experian violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Ms. Clark's disputes and that was inaccurate or could not be verified.

201.   As a result of this conduct, Ms. Clark suffered actual damages.

202.   Experian's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

203.   Ms. Clark is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorney's fees from Experian pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory and punitive damages, as well as their attorney's fees and costs against the Defendant for their class claim and such other relief the Court as well as actual, statutory, and punitive damages, attorney's fees and costs for Plaintiff Clark's individual claim against Defendant; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFFS, *on behalf of themselves and all others similarly situated individuals***

By_____
            Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
lenbennett@clalegal.com
srotkis@clalegal.com

Kristi Cahoon Kelly, VSB No. 72791
Andrew J. Guzzo, VSB No. 82170

KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
Tel: (703) 424-7576
Fax: (703) 591-9285
kkelly@kellyandcrandall.com
aguzzo@kellyandcrandall.com